KEKER, VAN NEST & PETERS LLP
STEVEN K. TAYLOR - # 204668
staylor@keker.com
TRAVIS SILVA - # 295856
tsilva@keker.com
VICTOR CHIU - # 305404
vchiu@keker.com
ELIANE HOLMLUND - # 348883
eholmlund@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Plaintiff AVIAGAMES INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVIAGAMES INC., | Case No. |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | **(1) COPYRIGHT INFRINGEMENT** |
| GUANGZHOU SNAIL INTERACTIVE TECHNOLOGY CO., LTD; JOYBOX STUDIO LIMITED; PRINSLOO GLOBAL GROUP INC.; and YIMIN SUN, | **(2) VICARIOUS COPYRIGHT INFRINGEMENT** |
| | **(3) VIOLATIONS OF THE DIGITAL MILLENIUM COPYRIGHT ACT** |
| Defendants. | **DEMAND FOR JURY TRIAL** |

# NATURE OF THE ACTION

1. Defendants Guangzhou Snail Interactive Technology Co., Ltd., JoyBox Studio Limited, and Prinsloo Global Group Inc. have engaged in a campaign of blatantly copying AviaGames, Inc.'s ("Avia") original and creative video advertisements that promote its popular mobile games. Rather than spending the necessary time, money, and effort to create their own ads, Defendants took a shortcut. They copied seventy-nine of Avia's copyrighted video ads, modestly edited those ads so as to substitute images of their own competing games for those of Avia's mobile games, posted them on social media, and lured users to their competing mobile apps, which offered illegal gambling games to customers.

2. Defendants' scheme of copyright infringement was vital to their success. Upon information and belief, Defendants' infringing copies of Avia's video ads generated *tens of millions* of ad impressions, allowing Defendants to make millions of dollars from their piracy of Avia's original works.

3. Defendants' infringement was and continues to be willful. Avia has repeatedly notified Defendant Yimin Sun—the Chief Executive Officer and legal representative of Guangzhou Snail who, in effect, controls JoyBox and Prinsloo—of the infringement. In response, Mr. Sun has admitted fault and assured Avia that he would stop any further infringement. That was false. Instead, Defendants have doubled down to increase their profits at Avia's expense. After shuttering operations for Prinsloo, an alter ego of Guangzhou Snail and shell company designed to dodge liability, JoyBox (another alter ego of Guangzhou Snail) continues to infringe on Avia's copyrights.

4. When publishing their copycat versions of Avia's video ads, Defendants also removed Copyright Management Information ("CMI") that identified Avia as the author and owner of the original works, thus masking the true origin of the pirated works. Stripping such CMI and distributing unlawful copies of Avia's copyrighted ads without CMI is a distinct offense, separate from traditional copyright infringement.

5. Because Defendants' willful and ongoing infringement deprives Avia of substantial revenue it would have otherwise received but for their unlawful copying, Avia has no choice but to file this lawsuit and seek damages and all other appropriate relief.

# PARTIES

6. Plaintiff Avia is a corporation organized under the laws of the state of Delaware, with its principal place of business in California.

7. Defendant JoyBox Studio Limited ("JoyBox") is a corporation organized under the laws of the state of Nevada, with its principal place of business in Nevada.

8. Defendant Prinsloo Global Group Inc. ("Prinsloo") is a corporation organized under the laws of the state of New York, with its principal place of business in New York.

9. Defendant Guangzhou Snail Interactive Technology Co., Ltd ("Snail") is a corporation organized under the laws of China, with its principal place of business in China.

10. Defendant Yimin Sun is an individual who resides in China.

11. JoyBox is an alter ego of Snail. Upon information and belief, Snail is a corporate affiliate of JoyBox and exercises complete and exclusive control over JoyBox, so there is unity of ownership between both corporate entities:

   i) Until 2022, JoyBox's President, Secretary, Treasurer, and Director was Defendant Yimin Sun. Mr. Sun registered Snail as a company in China and has been its largest shareholder from 2018 through at least 2024. Avia estimates that Mr. Sun held as much as 90% of Snail's shares in July 2024 and as much as 87% of Snail's shares in 2021. Mr. Sun now serves as Snail's CEO and, upon information and belief, also serves as its legal representative in China.

   ii) After Avia gave Mr. Sun notice of JoyBox's copyright infringement and notified distribution platforms and payment processors of JoyBox and Prinsloo's unlawful copying, Mr. Sun texted an executive at Avia and admitted fault.

   iii) Mr. Sun further informed the Avia executive that he issued orders to stop any further copyright infringement.

   iv) On a separate occasion, Mr. Sun also attempted to contact Avia's CEO to apologize for Avia's complained-of copying.

v)  Later, attorneys who purported to represent Snail also contacted Avia attorneys to arrange a meeting, which turned out to relate to the issues of copyright infringement that Avia had previously raised.

vi)  During the meeting to discuss the complained-of copying, Snail's in-house counsel wore a nametag identifying herself as "JoyBox Legal Counsel," confirming that Snail views itself and JoyBox to be one and the same.

12.  Prinsloo and JoyBox are, in effect, the same company and therefore Prinsloo is also an alter ego of Snail.  Snail, Prinsloo, and JoyBox share a unity of interest and act as the same corporate entity:

i)  Like JoyBox, Prinsloo is, upon information and belief, a corporate affiliate of Snail and is subject to its complete and exclusive control.

ii)  As discussed above, after Avia notified distribution platforms and payment processors of JoyBox and Prinsloo's unlawful copying, Mr. Sun (the current CEO and legal representative of Snail), admitted fault and represented to Avia that he issued orders to cease any further copying.

iii)  As discussed above, Snail's attorney, who simultaneously purports to be JoyBox's attorney, discussed the complained-of copying with Avia.

iv)  JoyBox registered the websites for both JoyBox and Prinsloo.  The website domains for both JoyBox and Prinsloo are registered through the same domain service provider and use the same Cloudflare nameservers.

v)  Both JoyBox and Prinsloo clearly share operations, as they offered the same mobile app games and features.  For instance, JoyBox's *Solitaire Master* app includes slot games that are nearly identical in game style, user interface, and overall design to those in Prinsloo's games, including *Diamond Fortunes*, *Treasury of Jackpot*, *Super Bonanza Xmas*, and *Golden Piggy Fortune*.

vi)  Prinsloo is undercapitalized.  Upon information and belief, Prinsloo only has one employee.  After receiving notice of its copyright infringement, Prinsloo ceased operations entirely, confirming that it is a corporate shell designed to dodge liability.

3
COMPLAINT
Case No.

3114178

vii) According to the Division of Corporations from New York's Department of State, Prinsloo is past due for its required business filings.

13. In sum, JoyBox, Prinsloo, and Snail are not separate entities but operate as a single enterprise at the direction of Snail. Defendants must be treated as alter egos because separating their liability and allowing any one of these companies to avoid liability for the consequences of their rampant copyright infringement would be inequitable.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a) because this action arises under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*

15. Defendants are subject to this Court's jurisdiction because they have substantial business within California, including by at least purposefully directing their infringing activities to California. Defendants conduct or conducted extensive business with users in California, and distribute or distributed their mobile games to California through services offered by Apple, Inc. a California company. Defendants also intentionally chose to copy video advertisements from Avia, a known competitor with its principal place of business in California. Defendants displayed their infringing ads on Facebook, which is headquartered in California. As part of their scheme of infringement, Defendants targeted California by making its cash tournament mobile games specifically available to California residents but not residents of other states.[1] As a result of their infringement, Defendants derived substantial revenue from California residents.

16. Venue is proper in this District under 28 U.S.C. § 1391 because substantial activity giving rise to the claim herein occurred in this District.

## DIVISIONAL ASSIGNMENT

17. Because this is an intellectual property case, it may be assigned to any division under Civil Local Rule 3-2(c) and N.D. Cal. General Order No. 44.

---

[1] *See, e.g.*, Tripeaks Winner: Solitaire, *available at* https://apps.apple.com/us/app/tripeaks-winner-solitaire/id6463776814 (last visited Sept. 8, 2025) (JoyBox disabling its cash tournament in ten other states, such as Arizona, Arkansas, and Indiana).

**FACTUAL BACKGROUND**

18. Avia is a leading gaming app developer that creates engaging, skill-based mobile games. The company was co-founded in 2017 by Vickie Chen and Ping Wang, who remain at Avia today as CEO and VP of Strategy and Development, respectively. Through its online platform, Avia offers numerous unique games, including puzzle, card, math, and brain games. These games are accessible to players through different platforms, including the Apple App Store, Google Play Store, and Galaxy Store. Avia's games can be played for free, or users can elect to pay an entry fee to compete for cash prizes.

19. Avia has hosted over 450 million tournaments for its games and users have, to date, downloaded Avia's games over 60 million times. Avia's games, such as *Solitaire Clash*, *Bingo Tour*, *Bingo Clash*, and the multi-game app *Pocket7Games*, are among the top-ranking mobile apps available today.[2] In recognition of its success and popularity with users, Avia has won multiple prestigious awards in the mobile gaming industry, including the BIG Innovation Award and the 2024 Globee Awards for American Business.

20. JoyBox also develops gaming apps, which are available on the Apple App Store. JoyBox is Avia's competitor.

21. Prinsloo developed gaming apps, including *Bubble Peak* and *Fortune Bingo*, and competed with Avia. Prinsloo is now defunct and no longer offers these or any other apps.

22. According to its website, Snail offers services to help app developers create mobile app games and advertise them.[3]

**Avia's Video Advertisements Promote Its Unique Games**

23. Avia's mobile games have amassed a significant customer base through Avia's extensive marketing efforts. Avia has invested a substantial amount of financial and human resources to promote its products, including, but not limited to, creating and publishing numerous advertisements featuring its mobile games. To create its video advertisements, Avia

---

[2] *See, e.g.*, Apple App Store Preview, *available at* https://apps.apple.com/us/charts/iphone/board-games/7004 (last visited Sept. 3, 2025) (identifying Solitaire Clash as one of the top free games available on the iPhone).

[3] *See* www.9snail.com (last visited Sept. 18, 2025).

commissioned various professionals to prepare a script for the advertisement, decide its setting/background, act in it, film it, and finalize the production.  These professionals expend significant creativity, time, and effort to develop the video advertisements that Avia relies on to attract more users and increase the popularity of its games.

24. Avia's video advertisements promote, among other things, the ability for users to win cash through Avia's skill-based games.  For instance, a screenshot from one of Avia's video advertisements for *Bingo Tour* is below:



25. Avia's advertisements are widely published and can be seen on Avia's website (www.aviagames.com), as well as Avia's social media accounts, including Facebook, YouTube, and TikTok.  Avia's video advertisements are original, creative works that are copyrighted and owned by Avia.

26. As discussed further below, Defendants unlawfully copied seventy-nine (79) Avia video advertisements, each of which is registered with the Copyright Office.  The registration numbers and effective dates of registrations for the copyrights-in-suit (collectively, the "Avia Works") are as follows: PA 2-548-958 (September 07, 2025); PA 2-549-164 (September 9,

2025); PA 2-549-165 (September 9, 2025); PA 2-549-16 (September 9, 2025); PA 2-549-168 (September 9, 2025); PA 2-549-169 (September 9, 2025); PA 2-549-170 (September 9, 2025); PA 2-549-172 (September 9, 2025); PA 2-549-175 (September 9, 2025); PA 2-549-201 (September 9, 2025); PA 2-549-206 (September 9, 2025); PA 2-549-208 (September 9, 2025); PA 2-549-221 (September 9, 2025); PA 2-549-227 (September 9, 2025); PA 2-549-230 (September 9, 2025); PA 2-549-234 (September 9, 2025); PA 2-549-271 (September 9, 2025); PA 2-549-277 (September 9, 2025); PA 2-549-279 (September 9, 2025); PA 2-549-283 (September 9, 2025); PA 2-549-286 (September 9, 2025); PA 2-549-307 (September 8, 2025); PA 2-549-310 (September 9, 2025); PA 2-549-315 (September 8, 2025); PA 2-549-317 (September 9, 2025); PA 2-549-320 (September 8, 2025); PA 2-549-323 (September 8, 2025); PA 2-549-329 (September 8, 2025); PA 2-549-331 (September 8, 2025); PA 2-549-332 (September 8, 2025); PA 2-549-575 (September 9, 2025); PA 2-549-576 (September 9, 2025); PA 2-549-578 (September 9, 2025); PA 2-549-579 (September 9, 2025); PA 2-549-580 (September 9, 2025); PA 2-549-941 (September 11, 2025); PA 2-549-953 (September 11, 2025); PA 2-549-954 (September 11, 2025); PA 2-549-955 (September 10, 2025); PA 2-549-956 (September 10, 2025); PA 2-549-957 (September 11, 2025); PA 2-549-958 (September 11, 2025); PA 2-549-959 (September 10, 2025); PA 2-549-960 (September 11, 2025); PA 2-549-961 (September 11, 2025); PA 2-549-962 (September 11, 2025); PA 2-549-966 (September 10, 2025); PA 2-549-973 (September 11, 2025); PA 2-549-974 (September 10, 2025); PA 2-549-975 (September 10, 2025); PA 2-549-977 (September 11, 2025); PA 2-549-978 (September 11, 2025); PA 2-550-001 (September 10, 2025); PA 2-550-002 (September 11, 2025); PA 2-550-003 (September 11, 2025); PA 2-550-004 (September 10, 2025); PA 2-550-005 (September 10, 2025); PA 2-550-006 (September 11, 2025); PA 2-550-007 (September 10, 2025); PA 2-550-008 (September 11, 2025); PA 2-550-009 (September 11, 2025); PA 2-550-010 (September 11, 2025); PA 2-550-011 (September 11, 2025); PA 2-550-012 (September 11, 2025); PA 2-550-278 (September 12, 2025); PA 2-550-280 (September 12, 2025); PA 2-550-281 (September 12, 2025); PA 2-550-309 (September 12, 2025); PA 2-550-310 (September 12, 2025); PA 2-550-311 (September 12, 2025); PA 2-550-316 (September 12, 2025); PA 2-550-318 (September 12, 2025); PA 2-550-320

1  (September 12, 2025); PA 2-550-321 (September 12, 2025); PA 2-550-322 (September 12, 2025);
2  PA 2-550-324 (September 12, 2025); PA 2-550-327 (September 17, 2025); PA 2-550-328
3  (September 12, 2025); PA 2-550-329 (September 12, 2025).

**Defendants Make Near Verbatim Copies of Avia's Video Advertisements**

27.  Throughout 2025, if not earlier, JoyBox and Prinsloo copied *each and every one* of the seventy-nine Avia Works and displayed them as advertisements for their own competing mobile apps.  There was nothing subtle about Defendants' infringement.  Defendants' pirated versions of each Avia Work simply substituted images of their own competing games for those of Avia's games.  As part of their infringement scheme, Defendants then posted their infringing ads under a shell account on social media platform(s), including Facebook.  To give just a few examples of Defendants' infringement, below are exemplary side-by-side screenshots reflecting Defendants' blatant copying of different Avia Works:



| Avia's Video Ad for *Bingo Tour* (PA 2-549-315) | JoyBox's Infringing Ad for *Bingo Golden – Win Cash* |
|---|---|

| Avia's Video Ad for *Bingo Tour* (PA 2-549-329) | JoyBox's Infringing Ad for *Bingo Golden – Win Cash* |
|---|---|
| |  |

| Avia's Video Ad for *Solitaire Clash* (PA 2-549-169) | Prinsloo's Infringing Ad for *8 Ball Cash: Win Real Cash* |
|---|---|
|  |  |

9
COMPLAINT
Case No.

3114178

| Avia's Video Ad for *Solitaire Clash* (PA 2-550-012) | Prinsloo's Infringing Ad for *Bingo Royal* |
|---|---|
|  |  |

28. Defendants' copycat versions of the Avia Works were critical to their success. Upon information and belief, Defendants' infringing copies constituted a significant portion of their video advertisements and generated tens of millions of video ad impressions for Defendants in the past year. Avia estimates that JoyBox and Prinsloo's total revenue in the past year is in the hundreds of millions of dollars. Defendants profited handsomely from their widespread campaign of copying the Avia Works, which diverted customers away from downloading and playing Avia's mobile games.

29. Defendants' infringement induced customers to play JoyBox and Prinsloo's illegal chance-based gambling games (such as slots), which are available within JoyBox and Prinsloo's mobile apps, including *Bubble Peak*. There, a player can purchase in-app cash equivalent currency, play a chance-based slot game, and convert the in-app currency into real-money cash. In short, Defendants' copying of the Avia Works led users to play illegal gambling games.

**Defendants Continue to Copy the Avia Works Despite Repeated Warnings**

30. Upon learning of Defendants' rampant copying, Avia promptly gave notice to JoyBox of its infringement by sending a cease-and-desist letter in late February 2025. In March 2025, Avia notified Mr. Sun—JoyBox's former President, Secretary, Treasurer, and Director and current CEO and legal representative of Snail—of JoyBox's copyright infringement. Mr. Sun informed Avia that Snail conducted an internal review and had the infringing ads removed.

31. In the early summer of 2025, Avia sent multiple cease-and-desist letters to distribution platforms and payment processors, all requesting that JoyBox and Prinsloo's games be taken down and that these vendors stop doing business with JoyBox and Prinsloo in light of, among other things, their pattern of blatant copyright infringement.

32. After Avia sent these letters regarding JoyBox and Prinsloo's unlawful copying of Avia's advertisements, Mr. Sun asked an Avia executive for a meeting. During this exchange, Mr. Sun admitted fault and claimed that he issued strict internal orders to halt the complained-of copying regarding Avia's video advertisements.

33. Around early July 2025, Mr. Sun also attempted to contact Avia's CEO, Ms. Chen, to apologize for the unlawful copying of the Avia Works. On July 29, 2025, two attorneys who claimed to be Snail's legal counsel separately texted Avia's counsel at a conference and asked for a meeting to discuss JoyBox's infringement. The next day, one Avia counsel participated in a meeting with the purported "Snail" representative, who was wearing a nametag identifying herself as "JoyBox Legal Counsel," confirming that JoyBox and Snail are one and the same. During the meeting, Avia reiterated the seriousness and extent of the complained-of copying. The Snail/JoyBox lawyer provided no assurance that Snail, JoyBox, or Prinsloo would halt their continued infringement of the Avia Works.

34. In a bid to shield itself from liability, Prinsloo has, upon information and belief, ceased operations entirely and no longer offers any mobile apps. However, the other Defendants' copying of Avia's copyrighted video ads continued.

# CAUSES OF ACTION

## Count I – Copyright Infringement (17 U.S.C. § 501)

### (Against JoyBox, Prinsloo, and Snail)

35. Avia incorporates by reference the foregoing allegations as if fully set forth herein.

36. The Avia Works are original and creative works of authorship fixed in a tangible medium of expression. Avia owns the Avia Works and has registered each work with the Copyright Office.

37. Defendants JoyBox, Prinsloo, and Snail had access to the Avia Works, which are publicly available.

38. Defendants JoyBox, Prinsloo, and Snail have infringed Avia's exclusive rights under 17 U.S.C. § 106 by, at a minimum, reproducing and displaying the Avia Works.

39. Defendants JoyBox, Prinsloo, and Snail's infringing conduct as alleged herein was willful. Defendants knew that they unlawfully copied the Avia Works. Indeed, after Avia informed Mr. Sun of JoyBox's copyright infringement and sent multiple cease-and-desist letters to distribution platforms and payment processors regarding JoyBox and Prinsloo, Mr. Sun admitted fault and assured Avia that he would halt any further copying. Despite a meeting between JoyBox/Snail's lawyers and Avia, Defendants continued their infringement. In short, Defendants infringed on Avia's exclusive rights, knowing that they were profiting from copyright infringement.

40. The infringement of Avia's copyrights harmed and continues to harm Avia.

## Count II – Vicarious Copyright Infringement

### (Against Yimin Sun)

41. Avia incorporates by reference the foregoing allegations as if fully set forth herein.

42. Mr. Sun controlled, directed, and profited from the infringement perpetrated by JoyBox, Prinsloo, and Snail.

43. Mr. Sun had a direct, financial benefit based on JoyBox, Prinsloo, and Snail's copyright infringement. Mr. Sun is the CEO of Snail and was its largest shareholder from at least 2018 to 2024. Avia estimates that, in July 2024, Mr. Sun held as much as 90% of Snail's shares.

JoyBox and Prinsloo are alter egos of Snail.  Accordingly, JoyBox and Prinsloo's unlawful copying resulted in increased profits for Snail and gave a clear and direct financial benefit to Mr. Sun.

44.  Mr. Sun had the right and ability to control the infringing activity of JoyBox, Prinsloo, and Snail.  As the CEO and legal representative of Snail, Mr. Sun had the right and ability to control Snail's alter egos, JoyBox and Prinsloo.  Mr. Sun's control over both entities is underscored by the fact that he apologized on behalf of JoyBox and/or Prinsloo and by the fact that he claimed to have issued orders to JoyBox and/or Prinsloo to stop any further infringement of the Avia Works.  Despite having the right and ability to control JoyBox, Prinsloo, and Snail's copyright infringement, Mr. Sun declined to exercise that right so that he could profit from their scheme of infringement.

## Count III – Violation of the Digital Millenium Copyright Act (17 U.S.C. § 1202)
### (Against JoyBox, Prinsloo, and Snail)

45.  Avia incorporates by reference the foregoing allegations as if fully set forth herein.

46.  The titles of Avia's mobile games and Avia's user handle on Facebook, Instagram, and TikTok constitute CMI conveyed in connection with the Avia Works.

47.  Defendants JoyBox, Prinsloo, and Snail created copies of Avia Works with such CMI (the titles of Avia's mobile games and its user handle) intentionally removed and unlawfully displayed them as their own advertisements on social media platforms such as Facebook.

48.  In violation of Section 1202(b)(1) of the Digital Millenium Copyright Act, Defendants JoyBox, Prinsloo, and Snail removed the CMI from the Avia Works.  Defendants JoyBox, Prinsloo, and Snail knew or had reasonable grounds to know that such removal will enable, facilitate, and/or conceal their copyright infringement.

49.  In violation of Section 1202(b)(3) of the Digital Millenium Copyright Act, Defendants JoyBox, Prinsloo, and Snail created copies of the Avia Works and distributed them without their CMI.

50.  Defendants' JoyBox, Prinsloo, and Snail's removal of CMI and distribution of unlawful copies of the Avia Works without CMI harmed and continues to harm Avia.

# PRAYER FOR RELIEF

WHEREFORE, Avia respectfully requests this Court to enter judgment against Defendants, granting the following relief:

1. Judgment that Defendants infringed one or more of Avia's copyrights in the Avia Works;

2. A declaration that such infringement was willful;

3. An award of actual damages and any additional infringer's profits under 17 U.S.C. § 504 together with pre-judgment and post-judgment interest on the damages award, or if elected prior to final judgment, statutory damages pursuant to 17 U.S.C. § 504(c);

4. An award of actual damages and any additional infringer's profits under 17 U.S.C. § 1203 together with pre-judgment and post-judgment interest on the damages award, or if elected prior to final judgment, statutory damages pursuant to 17 U.S.C. § 1203(c)(3);

5. An injunction enjoining Defendants, their officers, agents, servants, employees, successors, assigns, and all persons acting in concert with them, from directly or indirectly engaging in acts that infringe Avia's copyrights in the Avia Works or violate Avia's rights under 17 U.S.C. § 1202;

6. Attorneys' fees and costs in this action; and

7. Any and all other legal or equitable relief that the Court deems just and proper.

# DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Avia hereby demands a trial by jury as to all issues so triable.

Dated: October 10, 2025

KEKER, VAN NEST & PETERS LLP

By: */s/ Steven K. Taylor*
STEVEN K. TAYLOR
TRAVIS SILVA
VICTOR CHIU
ELIANE HOLMLUND

Attorneys for Plaintiff AVIAGAMES INC.