1  Matthew F. Murray (State Bar No. 313277)
   mmurray@rutan.com
2  RUTAN & TUCKER, LLP
   Five Palo Alto Square
3  3000 El Camino Real, Suite 200
   Palo Alto, CA 94306-9814
4  Telephone: (650) 320-1500
   Facsimile: (650) 320-9905
5

6  Ronald P. Oines (State Bar No. 145016)
   roines@rutan.com
7  Talya Goldfinger (State Bar No. 294926)
   tgoldfinger@rutan.com
8  RUTAN & TUCKER, LLP
   18575 Jamboree Road, 9th Floor
9  Irvine, CA 92612
   Telephone: 714-641-5100
10 Facsimile: 714-546-9035

11 Attorneys for Defendant
   JOYBOX STUDIO LIMITED
12

13                UNITED STATES DISTRICT COURT

14                NORTHERN DISTRICT OF CALIFORNIA

15                   SAN FRANCISCO DIVISION

| | |
|---|---|
| 16  AVIAGAMES INC., | Case No. 3:25-cv-08709-JD |
| 17           Plaintiff, | **DEFENDANT JOYBOX STUDIO LIMITED'S LIMITED OPPOSITION TO PLAINTIFF'S MOTION TO SERVE BY ALTERNATIVE MEANS AND TO EXTEND THE DEADLINE FOR SERVICE OF PROCESS** |
| 18     v. | |
| 19  GUANGZHOU SNAIL INTERACTIVE TECHNOLOGY CO., LTD; JOYBOX STUDIO LIMITED; PRINSLOO GLOBAL GROUP INC.; and YIMIN SUN, | |
| 20 | |
| 21 | Judge: Hon. James Donato |
| 22           Defendants. | Date Filed: October 10, 2025 |
| 23 | Trial Date: None Set |

Rutan & Tucker, LLP
attorneys at law

2118/040117-0001
23267958.2 a01/12/26

Case No. 3:25-cv-08709-JD
JOYBOX'S OPPOSITION TO MOTION FOR ALTERNATIVE SERVICE

## I. INTRODUCTION

Plaintiff AviaGames, Inc.'s ("Plaintiff" or "Avia") claim that it has "made several efforts to notify the other defendants" (Mot.[1] at 4) rings hollow in light of its own admission that it never attempted the very method the governing authorities require (Mot. at 4, 6) at the outset. Avia characterizes its motion as a request for the Court to approve alternative service under Rule 4(f)(3). However, for JoyBox Studio Ltd. ("JoyBox"), this is not the case. JoyBox has waived service, appeared, and is actively litigating in the case. *See* Dkt. Nos. 15, 20–22. Nonetheless, Avia requests the Court to order that JoyBox serve as the conduit for service on Defendants Yimin Sun ("Sun"), Guangzhou Snail Interactive Technology Co. Ltd. ("Snail"), and Prinsloo Global Group Inc. ("Prinsloo"), (collectively, "Other Defendants"), on the theory that JoyBox is their "domestic affiliate" and, ultimately their "alter ego." (Mot. at 11–13.) This statement does not constitute a proper legal service alternative but rather an attempt to frame a disputed merits argument within a procedural service context. That is confirmed by Avia's demand that JoyBox be subject to expedited discovery into various merits issues. (Mot. at 13.)[2]

Avia's "via JoyBox" request also lacks the fundamental predicate one would expect before imposing it. And Avia's own evidence confirms the opposite: when Avia asked whether JoyBox's counsel represented the Other Defendants, JoyBox's counsel said they did not. (Mot. at 4; Mot. Silva Decl. ¶ 11 & Ex. H). That should end the inquiry. Ordering service via JoyBox on this record would not make the service more reliable.

Accordingly, JoyBox submits this limited response in opposition to Avia's Motion. JoyBox does not oppose a reasonable alternative service directed to Sun, Snail, and Prinsloo if the Court finds such relief warranted. The Court can address Avia's service concerns without conscripting JoyBox or giving procedural weight to disputed alter ego allegations that are not properly before the Court on a Rule 4 motion.

/ / /

---

[1] "Motion" and "Mot. at __" refer to Plaintiff's Motion to Serve by Alternative Means and to Extend the Deadline for Service of Process. (Dkt. No. 19). "Mot. Ex. __ at __" refers to exhibits to the Motion.

[2] Avia's request for expedited merits discovery is particularly inappropriate in view of JoyBox's pending challenge to personal jurisdiction.

Rutan & Tucker, LLP
attorneys at law

2118/040117-0001
23267958.2 a01/12/26

Case No. 3:25-cv-08709-JD
JOYBOX'S OPPOSITION TO MOTION FOR
ALTERNATIVE SERVICE

## II. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 4(h)(2) authorizes service of process on a foreign business entity in the manner prescribed by Rule 4(f) for individuals in foreign countries. Subsection (f)(1), implementing the Hague Service Convention, authorizes service of process on foreign defendants "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f)(1). "The United States and China are both parties to the Hague Service Convention, a multilateral treaty whose purpose is to simplify, standardize, and generally improve the process of serving documents abroad." *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 480 F. Supp. 3d 977, 980 (N.D. Cal. 2020). The Supreme Court and the Ninth Circuit have long held that when the Hague Service Convention applies, it supplies the exclusive framework for valid service in a signatory country. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 706 (1988). Put differently, where service requires the transmission of judicial documents abroad to a Convention state, "the validity of [] service [abroad] is controlled by the Hague Convention, to the extent that the Convention applies." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).

Alternatively, Rule 4(f)(3) permits service "by other means not prohibited by international agreement, as the court order." The Ninth Circuit has made clear that Rule 4(f)(3) is not a "last resort" nor "extraordinary relief" and is "merely one means among several which enables service of process on an international defendant." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). Even so, court-directed service is not boundless, a plaintiff must propose a method that (i) is not prohibited by an applicable international agreement and (ii) comports with due process—i.e., is "reasonably calculated, under all the circumstances," to apprise the defendant of the action and afford an opportunity to respond. *Id*. at 1016–17 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

## III. ARGUMENT

The Court should deny Avia's requested alternative service via JoyBox for at least two reasons. First, Avia has not shown the diligence required under Rule 4 to attempt service. Avia

Rutan & Tucker, LLP
attorneys at law

2118/040117-0001
23267958.2 a01/12/26

-1-

Case No. 3:25-cv-08709-JD
JOYBOX'S OPPOSITION TO MOTION FOR
ALTERNATIVE SERVICE

waited, took limited steps, and now asks the Court to solve a timing problem of its own making. Dragging JoyBox into the service process is unjustified under such circumstances. Avia cannot now rely on a thin record of attempted service efforts to cure the calculated delay.

Second, Avia's cited "affiliate service" authorities do not support the order it seeks. Those cases predicate on a concrete and undisputed factual basis—an established domestic agent or subsidiary relationship. Avia offers none of that. Its Motion instead rests on contested allegations and conclusory assertions. This cannot substitute for the factual and legal showing those cited cases require.

> **A.  The Hague Service Convention Applies, and Avia's Failure to Attempt Convention Service Forecloses Any Request to Route Service Through JoyBox**

Avia's Motion does not dispute the fact that Sun and Snail are residents of China. *See* Mot. at 1; *see also* Compl. ¶¶ 9, 10. Nor does Avia dispute that the Convention governs any service that requires transmission of process into China. *See* Mot. at 9. China is a signatory to the Hague Service Convention, under which foreign service of process ordinarily initiates through the Convention's prescribed channels. *Rio*, 284 F.3d at 1016.

Nonetheless, Avia asks the Court to route service through JoyBox, on the basis that Convention service is time-consuming. That showing is insufficient. *See e.g., Reintegrative Therapy Ass'n, Inc. v. Kinitz*, 2021 WL 5140195, at *3 (S.D. Cal. Nov. 4, 2021) (holding that "Plaintiffs' attempts to serve [defendant] are deficient … given Plaintiffs have not first attempted service on Canada's Central Authority" in accordance with the Convention). The Court should not shift the burdens of service to JoyBox where Avia has not even attempted the Convention process and cannot point to any concrete impediment, such as noncooperation by China's Central Authority or refusal to execute service.

Courts that credit "delay" as a reason to consider alternative service do so based on evidence of actual delay in the Convention process, rather than generalized statements that Hague service is time-consuming. Foreign authorities presumptively have six months to complete service. *See* Fed. R. Civ. P. 4, 1993 Advisory Committee Notes, subd. (f). Thus, when courts allow Rule 4(f)(3) on a delay rationale, the record typically reflects a Convention request that has been pending for many

Rutan & Tucker, LLP
attorneys at law

2118/040117-0001
23267958.2 a01/12/26

-2-

Case No. 3:25-cv-08709-JD
JOYBOX'S OPPOSITION TO MOTION FOR
ALTERNATIVE SERVICE

months beyond that period. *See, e.g.*, *Prods. & Ventures Int'l v. Axus Stationary (Shanghai) Ltd.*, 2017 WL 1378532, at *3 (N.D. Cal. Apr. 11, 2017) (permitting alternative service where, eleven months after plaintiff submitted documents to Central Authority, service had not been completed); *Morningstar v. Dejun*, 2013 WL 502474, at *2 (C.D. Cal. Feb. 8, 2013) (ordering alternative service where plaintiffs had attempted to serve process in China for over a year); *In re South African Apartheid Litig.*, 643 F. Supp. 2d 423, 437 (S.D.N.Y. 2009) (ordering alternative service where attempts at service through the Hauge Convention were delayed by six years).

Here, Avia's own description of its efforts underscores a mere speculation. As to Sun and Snail, Avia relies primarily on the prospect of a Hague delay, a WeChat message to Sun, and the assertion that certain email addresses exist. *See* Mot. at 6 (speculation based on a conclusory assertion regarding "current non-cooperative international environment"); *see also id.* at 2–3 (discussing email addresses and WeChat); As to Prinsloo, Avia points to three attempted deliveries and one follow-up email. *See id.* There is no pending Hague request, no Central Authority response, and no record of noncooperation. There is just Avia's speculation about what might happen if it pursued the governing method. "The mere 'fact that alternate service will be faster does not, by itself, justify service by alternate means.'" *Centre Way Co. Ltd. v. Fuzhou Puhua Minghui Trading Co. Ltd.*, 2020 WL 4673942, at *1 (N.D. Cal. Aug. 12, 2020) (quoting *Celgard, LLC v. Shenzhen Senior Technology Material Co. Ltd.*, 2012 WL 5550039, at *3 (N.D. Cal. Oct. 28, 2019))[3].

Nor does Avia's request become more palatable by repeatedly labeling JoyBox a "domestic affiliate" or "alter ego." *See* Mot. at 1, 7, 11, 13; *see also* Compl. ¶¶ 3, 11–13, 43–44. Courts in this District are reluctant to order "proxy" service through a domestic entity (or its counsel) absent a concrete necessity showing. In *Tevra Brands LLC v. Bayer Healthcare LLC*, for example, the plaintiff sought to serve German defendants via counsel for a U.S.–based subsidiary; the court denied the request, finding "the circumstances at bar do not necessitate [the court's] intervention," where the plaintiff had already attempted Hague service multiple times, there was no allegation of evasion, and the plaintiff failed to show Convention service would be unsuccessful or impose an

---

[3]   *Accord Keck v. Alibaba.com, Inc.*, 330 F.R.D. 255, 259 (N.D. Cal. 2018); *Jimena v. UBS AG Bank*, 2010 WL 2465333, at *10 (E.D. Cal. June 10, 2019).

Rutan & Tucker, LLP
attorneys at law

2118/040117-0001
23267958.2 a01/12/26

-3-

Case No.  3:25-cv-08709-JD
JOYBOX'S OPPOSITION TO MOTION FOR ALTERNATIVE SERVICE

unreasonable burden or delay. 2020 WL 3432700, at *4 (N.D. Cal. June 23, 2020). Here, Avia's showing is even weaker. Avia never identifies any basis—appointment, consent, or otherwise—for treating JoyBox as a proper recipient of service for the Other Defendants. And Avia never attempted Hague service. It points to no refusal by the Chinese Central Authority.

Though the Ninth Circuit noted that the Advisory Committee Notes contemplate that alternative service may be warranted even where other methods remain "incomplete or unattempted," it made the point in connection with circumstances involving "urgency." *See* Rio, 284 F.3d at 1015. Still, Avia has not demonstrated such a required urgency. To the contrary, Avia's timing confirms that this is a request for convenience, not necessity. It waited more than two months before bringing this Motion, and it did so only once the Rule 4(m) clock was becoming a problem with a January 8 expiration as to Prinsloo. Having taken that course, Avia cannot now ask the Court to solve its timing issue by routing service through JoyBox. A knowing and deliberate inaction to attempt service via an applicable treaty is not a justifiable "urgency". *See id*. If a plaintiff could invoke Rule 4(f)(3) simply by waiting, the plaintiff would have every incentive to do what Aiva did here—delay meaningful Convention service efforts, then come to the court and ask for alternative services as a matter of convenience.

### B.    Avia Cannot Bootstrap Contested Allegations Into a Rule 4 Order Requiring Service Via JoyBox

While Avia cannot justify alternative service via JoyBox on this record, its proposed mechanism is independently improper for a separate reason. Namely, it asks the Court to treat JoyBox's appearance in this case as a basis to force JoyBox into acting as the service conduit for Other Defendants. That is not what Rule 4 contemplates, nor is it consistent with the purpose of the Hague Service Convention.

Avia relies on a narrow line of decision, such as *In re LDK Solar Securities Litigation*[4], 2008 WL 2415186, for the proposition that service on a foreign defendant via an allegedly domestic

---

[4] Notably, *LDK Solar* has been singled out for scholarly criticism as part of a "limited" "line of cases misapplying Rule 4." Maggie Gardner, *Parochial Procedure*, 69 Stan. L. Rev. 941, 99 & n. 313, 1003 & nn. 330, 331 (2017). Professor Gardner explains that these decisions reflect "parochial pressures," elevating immediate case-management concerns over the broader comity interests embodied in international agreements governing service of process. *Id*. at 1002–03.

Rutan & Tucker, LLP
attorneys at law

2118/040117-0001
23267958.2 a01/12/26

-4-

Case No.  3:25-cv-08709-JD
JOYBOX'S OPPOSITION TO MOTION FOR ALTERNATIVE SERVICE

entity can be permissible under Rule 4(f)(3). However, those cases do not establish the blanket rule that Avia suggests. The cases are markedly distinguishable from the facts presented here, and in no way support the relief Avia seeks.

Avia's theory runs headlong into the due process concerns the Court identified in *In re China Educ. Alliance, Inc. Sec. Litig.*, 2011 WL 3715969 (C.D. Cal Aug. 22, 2011). There, the plaintiff urged the court to extend *LDK* and allow service on unserved individuals through the company's agent, arguing that it would be "easy" for the agent to deliver process and stressing that the company's participation meant the individual must be aware. *Id*. at *2–3. The court refused. The constitutional question is not convenience; it is reliability, which is whether the proposed method is "reasonably calculated" to reach each defendant. *See id*. at *3 (denying request to serve unserved individuals through the company's agent, where the individuals no longer work at the company; distinguishing *LDK* because the *LDK* unserved individuals all still work at the company; and finding the proposed proxy service raised due process concerns because it was not "reasonably calculated" to provide notice (citing *Rio.*, 284 F.3d at 1016)).

The same uncertainty is present here, and Avia's own allegations underscore it. Avia repeatedly emphasizes that Sun "has held" leadership roles across entities. Mot. at 12. But Avia's submissions importantly acknowledge that Sun's formal role at JoyBox is historical. *See id*. (where Avia's own allegations describe Sun's JoyBox roles as past tense); *see also id*. Silva Decl. ¶ 6 & Ex. C (attaching Nevada Secretary of State records viewed under "historical data," underscoring that Avia's own evidence is backward–looking rather than proof of any current operational role). That concession matters. Avia is asking the Court to assume present-day notice will follow through JoyBox to Sun and Snail, based on prior titles and alleged intertwining, even though Avia's own record reflects that Sun is not currently acting in an active management capacity for JoyBox.

Moreover, while Avia cites a string of other decisions, it does not do the work of showing that they fit the case. It offers no meaningful analysis of the facts that led to those rulings. The cited authorities support the opposite point. For example, in *In re TFT–LCD (Flat Panel) Antitrust Litig.*, the court authorized Rule 4(f)(3) service on a Taiwanese corporation through U.S. counsel in circumstances that bear little resemblance to what Avia seeks here. 270 F.R.D. 535, 536–38

Rutan & Tucker, LLP
attorneys at law

2118/040117-0001
23267958.2 a01/12/26

-5-

Case No. 3:25-cv-08709-JD
JOYBOX'S OPPOSITION TO MOTION FOR
ALTERNATIVE SERVICE

1  (N.D. Cal. 2010) (finding "the Hague Convention [] is inapplicable here because Taiwan is not a
2  signatory to that agreement[,]" and recognizing the litigation was a later stage in discovery). Here,
3  Avia has not even tried to serve Sun and Snail via the Convention, China is a signatory to the
4  Convention, and discovery has only just commenced. Accordingly, nothing in this record suggests
5  a real obstacle to Avia initiating service through the Convention's prescribed process.

6  Avia's reliance on *In re Cathode Ray Tube (CRT) Antitrust Litigation*, No. 07-5944 SC,
7  2008 WL 4104341 (N.D. Cal. 2008), is likewise misplaced. *CRT* did not create a rule authorizing
8  service through an allegedly related U.S. company. The court in *CRT* approved Rule 4(f)(3) service
9  because it was undisputed that the foreign defendants had domestic subsidiaries and domestic
10 counsel. *See CRT*, 2008 WL 4104341, at *1 (relying on *Volkswagen*, 486 U.S. at 707, for the
11 proposition that the Hague Convention does not apply where service is validly completed on a
12 domestic agent and no transmittal abroad is required).

13 This is not the case here. JoyBox is not Sun's or Snail's domestic agent for service, and
14 Avia's own record shows JoyBox's counsel disclaims representing the Other Defendants or having
15 authority to accept service for them. (Mot. at 4; Mot. Silva Decl. ¶ 11 & Ex. H). Avia thus is not
16 asking the Court to permit service on an established domestic subsidiary or agent. It is asking the
17 Court to deem JoyBox an agent for service based on disputed facts. *CRT* does not support that
18 judicially created agency, and it certainly exceeds the scope of *Volkswagen*. *See Liao v. Ashcroft*,
19 2009 WL 636191, at *3 (N.D. Cal. Mar. 11, 2009) ("[S]ervice of process...is an indispensable
20 prerequisite to the court's jurisdiction to proceed") (quoting *Beecher v. Wallace*, 381 F.2d 372, 373
21 (9th Cir. 1967)).

22 / / /
23 / / /
24 / / /

Rutan & Tucker, LLP
attorneys at law

2118/040117-0001
23267958.2 a01/12/26

-6-

Case No. 3:25-cv-08709-JD
JOYBOX'S OPPOSITION TO MOTION FOR
ALTERNATIVE SERVICE

## IV. CONCLUSION

For the foregoing reasons, JoyBox respectfully requests that the Court deny Avia's Motion to the extent it seeks authorization to serve Sun, Snail, or Prinsloo via JoyBox, and decline to order any relief that would subject JoyBox to expedited discovery or compel JoyBox to accept or facilitate service on behalf of Other Defendants.

Dated: January 12, 2026

RUTAN & TUCKER, LLP
RONALD P. OINES
MATTHEW F. MURRAY
TALYA GOLDFINGER

By: */s/ Ronald P. Oines*
Ronald P. Oines
Attorneys for Defendant
JOYBOX STUDIO LIMITED

Rutan & Tucker, LLP
attorneys at law

2118/040117-0001
23267958.2 a01/12/26

-7-

Case No. 3:25-cv-08709-JD
JOYBOX'S OPPOSITION TO MOTION FOR ALTERNATIVE SERVICE